IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF COLORADO

Case No.

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        v.

THE END OF THE RAINBOW PARTNERS, L.L.C., and
THE ESTATE OF MICHAEL F. ANDERSON,

        Defendants,

and

CAROLYN M. ANDERSON, individually, as the personal representative of
the Estate of Michael F. Anderson, and as trustee for the Michael Anderson Trust
and a trust for the benefit of her minor children,
THE END OF THE RAINBOW FOUNDATION, INC.,
SEAOMA CONSULTING COMPANY, and
BIGHORN WEALTH FUND, L.P.,

        Relief Defendants.

_____

# COMPLAINT
_____

      Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows against

Defendants, The End of the Rainbow Partners, LLC ("Rainbow Partners") and the Estate of

Michael F. Anderson ("Anderson Estate") (collectively, "Defendants"), and Relief Defendants

Carolyn M. Anderson, individually, as the personal representative of the Anderson Estate, and as

trustee for the Michael Anderson Trust and a trust established for the benefit of her minor

children, The End of the Rainbow Foundation ("Rainbow Foundation"), Seaoma Consulting

Company ("Seaoma"), and Bighorn Wealth Fund, L.P. ("Bighorn") (collectively, the "Relief

Defendants"):

# I.  SUMMARY

1.      This SEC enforcement action involves a fraudulent, securities offering conducted through Rainbow Partners by Michael F. Anderson, its deceased principal.  Through his fraudulent scheme, Mr. Anderson misappropriated over $2.3 million from Rainbow Partners' investors.  Prior to his death, Mr. Anderson, in a sworn affidavit, admitted defrauding Rainbow Partners' investors by among other things, misappropriating investor funds, fabricating account statements, and making Ponzi-like payments.

2.      From approximately March 2014 through the time of Mr. Anderson's death in February 2017, Rainbow Partners and Mr. Anderson raised approximately $5.3 million from 18 investors, many of whom considered Mr. Anderson to be a close friend.  Mr. Anderson claimed to be a retired, successful hedge fund manager who neither needed nor wanted additional income.  Mr. Anderson told prospective investors that he was willing to come out of retirement to invest their money to earn between 1 and 4 percent per month if they donated 12.5 to 20 percent of the trading profits to the Rainbow Foundation, which he claimed was a nonprofit organization created by him and his wife, Carolyn Anderson, to assist abused women and children.

3.      Mr. Anderson made numerous false statements to investors and prospective investors.  Contrary to what Mr. Anderson told investors, the Rainbow Foundation, a company controlled by Carolyn Anderson, was a sham that did no charitable work.  Instead Mr. Anderson used Rainbow Foundation as a vehicle to misappropriate investors' funds and pay personal expenses.

4. Mr. Anderson also misrepresented to Rainbow Partners' investors that his trading

strategy was successful. He sent investors falsified monthly account statement that purported to show trading gains, and made Ponzi-line "profit" payments. In fact, Rainbow Partners and Mr. Anderson incurred, but concealed from investors, substantial trading losses of approximately $589,355.

5.     Mr. Anderson and Rainbow Partners also misappropriated more than $2.3 million in investor funds by transferring at least $1.15 million to Bighorn, a hedge fund controlled by Mr. Anderson, and approximately $1.23 million to accounts owned by Carolyn Anderson and her companies, Rainbow Foundation and Seaoma.

6.     As a result of the conduct described herein, Defendants Rainbow Partners and Mr. Anderson violated the anti-fraud provisions of the federal securities laws. Specifically, Rainbow Partners and Mr. Anderson engaged in a scheme to defraud, thereby violating Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)], and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5]. Rainbow Partners and Mr. Anderson also obtained money from investors by means of and made materially misleading statements and omissions to investors concerning their investments, and have thus violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

7.     Relief Defendants Carolyn Anderson, Rainbow Foundation, Seaoma, and Bighorn received investors' funds misappropriated by Mr. Anderson, and were unjustly enriched because they provided no or negligible bona fide services or consideration in exchange for the funds received.

## II.     JURISDICTION AND VENUE

8. The Court has jurisdiction pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78(e) and 78aa].

9. Rainbow Partners and Mr. Anderson, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the means or instruments of transportation or communication in interstate commerce, in connection with the acts, practices, and courses of business set forth in this Complaint.

10. Venue lies in this Court pursuant to 15 U.S.C. §§ 77v(a) and 78aa, and 28 U.S.C. § 1391(b)(2). Rainbow Partners was originally formed as a Delaware limited liability company and had its principal place of business in Vail, Colorado. Michael Anderson and Carolyn Anderson resided in, and transacted business from, Vail, Colorado during all times relevant to the misconduct described in this Complaint. In addition, Relief Defendants Rainbow Foundation and Seaoma are Colorado companies, and during all times relevant to this Complaint, both entities' principal place of business was in Vail, Colorado. Bighorn maintained a bank account in Colorado through which it received misappropriated funds. Finally, many of the acts and practices described in this Complaint occurred in the District of Colorado.

## III. DEFENDANTS

11. **The End of the Rainbow Partners, LLC** is a Delaware limited liability company formed in March 2014 with its principal offices located in Vail, Colorado. In May 2015, Mr. Anderson also registered Rainbow Partners as a limited liability company in Florida. Carolyn Anderson was initially listed as the managing member of Rainbow Partners in the Limited Liability Company Agreement ("LLC Agreement"), on correspondence with investors, and on the bank and brokerage accounts. In December 2014, Mr. Anderson was listed as the

4

managing member in the LLC Agreement, and he controlled and directed the activities of
Rainbow Partners until his death on February 27, 2017.

12.     **The Estate of Michael F. Anderson** is the successor in interest to Michael

F. Anderson, who died on February 27, 2017.  Prior to his death, Mr. Anderson was the sole

person authorized to trade securities on behalf of Rainbow Partners.  In December 2014,

Mr. Anderson was listed as the managing member of Rainbow Partners in the LLC

Agreement.  Until his death, Mr. Anderson controlled the activities of Rainbow Partners,

Rainbow Foundation, and Bighorn.  Carolyn Anderson is the personal representative of the

Estate of Michael F. Anderson.

## IV.     RELIEF DEFENDANTS

13.     **Carolyn M. Anderson**, age 44, was a resident of Vail, Colorado during the

relevant time period.  Ms. Anderson was married to Michael Anderson until their divorce in

2009, and then remarried Mr. Anderson on February 7, 2017, less than three weeks prior to Mr.

Anderson's death.  Ms. Anderson was initially listed as the managing member of Rainbow

Partners in the LLC Agreement and on its bank and brokerage accounts.  Ms. Anderson created

and owned the Rainbow Foundation and its bank and brokerage accounts.  Ms. Anderson created

and owned the Seaoma and its bank and brokerage accounts.  Ms. Anderson is the personal

representative of the Anderson Estate.  Ms. Anderson is also the trustee for the Michael

Anderson Trust and the trustee for the Carolyn M. Anderson Trust created for the benefit of her

two minor children.

14.     **The End of the Rainbow Foundation, Inc.** is a Colorado corporation based in

Vail, Colorado.  Rainbow Foundation has never been operational or conducted any business.

Carolyn Anderson created and owned Rainbow Foundation, and was listed as the president of

Rainbow Foundation on its bank and brokerage accounts. From at least May 2014 through at least October 2016, Mr. Anderson transferred funds raised from investors in Rainbow Partners to the Rainbow Foundation, which was as a fraudulent device to misappropriate investors' funds through the guise of contributions to a charitable organization.

15.     **Seaoma Consulting Company** is a Colorado corporation based in Vail, Colorado. Carolyn Anderson created and owned Seaoma, and was listed as the president of Seaoma on its bank and brokerage accounts. From at least May 2014 through February 2017, Mr. Anderson transferred funds raised from investors in Rainbow Partners to Seaoma for nominal or no consideration.

16.     **Bighorn Wealth Fund, L.P.** is a Delaware limited partnership based in Vail, Colorado that operated as a hedge fund prior to Michael Anderson's death. Mr. Anderson was a manager at Bighorn. From at least September 2016 through January 2017, Mr. Anderson transferred funds raised from investors in Rainbow Partners to Bighorn for no consideration.

## V.     FACTS

**A.     Rainbow Partners, through Mr. Anderson, Raised Money Based upon Numerous False and Misleading Statements.**

17.     From March 2014 through February 2017, Rainbow Partners, acting through Mr. Anderson, raised approximately $5.3 million from 18 investors through the sale of membership interests in Rainbow Partners, which are securities in the form of investment contracts.

18.     Mr. Anderson told investors and potential investors that he was a retired, successful hedge fund manager who was willing, without compensation, to come out of retirement to manage their money. Mr. Anderson represented to investors that he would day trade their pooled investments pursuant to a proprietary algorithm he had developed and earn between 1 percent and 4 percent per month. Mr. Anderson further represented to investors and

potential investors that Rainbow Partners would donate 12.5 to 20 percent of his trading profits to the Rainbow Foundation, and the remaining profits would be distributed among member investors of Rainbow Partners based on a pro rata percentage of their investment amount.

19. Mr. Anderson created and provided investors with the Rainbow Partners' LLC Agreement, which each investor signed. The agreement provided, among other things, that the funds raised from investors would be invested "in stocks, bonds, and securities for the financial and educational benefit of the Members." The LLC Agreement authorized Michael Anderson to execute the day-to-day trades of all securities. The agreement provided that no compensation shall be paid to members for services rendered to Rainbow Partners. It also provided that "at the end of each calendar month, twenty percent (20%) of all profits will be donated to the non-profit charitable organization known as 'The End of the Rainbow Foundation, Inc.'. The remaining profits will be distributed to each Member in proportion to the percentage of ownership."

20. In or about December 2014, Mr. Anderson modified the LLC Agreement to identify him as the Managing Member and reduced the percentage of trading profits paid to the Rainbow Foundation to 12.5%.

21. Michael Anderson controlled Rainbow Partners' business operations, including soliciting and communicating with investors, making trading decisions, and preparing and distributing monthly account statements to investors.

22. Michael Anderson exercised control over Rainbow Partners' bank and brokerage accounts. Mr. Anderson executed electronic inter-bank transfers by electronically logging in under Ms. Anderson's user credentials, without her knowledge or consent. He directed Ms. Anderson to sign blank checks on behalf of Rainbow Partners, and then he subsequently completed the payment information on the Rainbow Partners' checks. He also forged Ms.

Anderson's signature on brokerage account documents.

23.     Mr. Anderson died on February 27, 2017.

24.     A few weeks before his death, Michael Anderson hired an attorney to help him draft a sworn confession.  In a February 2, 2017 notarized affidavit prepared with help from his attorney, Mr. Anderson admitted to defrauding Rainbow Partners' investors, fabricating their account statements, making distribution payments to investors with investors' funds rather than trading profits, and misappropriating investors' funds.  In the affidavit, Mr. Anderson also stated that he controlled all aspects of Rainbow Partners' business and was wholly responsible for transactions in the companies' bank and brokerage accounts.

**B.     Rainbow Partners and Michael Anderson Incurred Substantial Trading Losses and Misappropriated Investor Funds.**

25.     Between March 2014 and February 2017, Rainbow Partners, through Michael Anderson, incurred net trading losses of approximately $589,355.

26.     Rainbow Partners and Mr. Anderson misappropriated at least $2.3 million from investors.

27.     Rainbow Partners' transferred approximately $1.23 million to accounts associated with Carolyn Anderson and companies she controlled.  From March 2014 to January 2017, Rainbow Partners sent approximately $465,530 to accounts in Ms. Anderson's name and $186,323 to third parties for her benefit, approximately $217,943 to the Rainbow Foundation, and approximately $360,483 to Seaoma.

28.     Between September 2016 and January 2017, Rainbow Partners' also transferred $1.15 million to Bighorn, a hedge fund managed by Mr. Anderson.

**C.     Relief Defendants Received Ill-Gotten Gains.**

   **1)  Rainbow Foundation Received Ill-Gotten Gains**.

29.     Between March 2014 and February 2017, Rainbow Partners paid at least $217,943 of investors' funds, which were obtained through Mr. Anderson's and Rainbow Partners' misconduct, to Rainbow Foundation.

30.     The Rainbow Foundation was a sham charity with no office, employees, clients, business operations or charitable activities.

31.     Mr. Anderson used Rainbow Foundation as a fraudulent device to misappropriate investors' funds through the guise of contributions to a charitable organization.

32.     Rainbow Foundation has no legitimate claim to the funds received from Rainbow Partners.

33.     Rainbow Partners and Mr. Anderson did not generate trading profits during the relevant time period and therefore under the terms of the LLC Agreement, they were not authorized to transfer any funds to the Rainbow Foundation.

**2)  Seaoma Received Ill-Gotten Gains**.

34.     Between March 2014 and February 2017, Rainbow Partners paid at least $360,483 of investors' funds, which were obtained through Mr. Anderson and Rainbow Partners' misconduct, to Seaoma.

35.     Carolyn Anderson testified that on behalf of Seaoma she ran errands a few hours a week for Rainbow Partners, but she did not keep track of her hours or send bills or invoices to Rainbow Partners for the purported work that she did.  This limited, undocumented work does not provide Seaoma with a legitimate claim to over $360,000 of compensation.

36.     Seaoma did not provide bona fide services or other valuable consideration to Rainbow Partners and has no legitimate claim to the funds received from Rainbow Partners.

**3)  Carolyn Anderson Received Ill-Gotten Gains**.

37.     Between March 2014 and February 2017, Rainbow Partners paid at least $465,530 of investors' funds, which were obtained through Mr. Anderson's and Rainbow Partners' misconduct, to Carolyn Anderson.  In addition, Rainbow Partners also paid at least $186,323 of investors' funds, which were obtained through Mr. Anderson's and Rainbow Partners' misconduct, to third parties for Ms. Anderson's benefit.

38.     For example, during June 2016, Rainbow Partners received deposits totaling $628,835 from four investors.  On July 6, 2016, Rainbow Partners transferred $101,515 of the investors' funds to Carolyn Anderson.

39.     Carolyn Anderson did not provide bona fide services or other valuable consideration to Rainbow Partners and has no legitimate claim to the funds received from Rainbow Partners.

40.     Carolyn Anderson used the funds transferred from Rainbow Partners to the Rainbow Foundation, Seaoma, and her bank account to pay for, among other things, Ms. Anderson's federal tax debt, mortgage payments on her Vail home, private school tuition for the Andersons' children, life insurance for Michael Anderson, credit card bills, car payments, and other personal expenses.

**4)  Bighorn Received Ill-Gotten Gains**.

41.     On or about September 26, 2016, Rainbow Partners and Mr. Anderson transferred $1,000,000 of investors' funds, which were obtained through Mr. Anderson's and Rainbow Partners' misconduct to Bighorn.  On or about January 27 and 31, 2017, Rainbow Partners and Mr. Anderson transferred $100,000 and $50,000, respectively, of investors' funds, which were obtained through Mr. Anderson's and Rainbow Partners' misconduct, to Bighorn.

42.     Bighorn did not provide bona fide services or other valuable consideration to

Rainbow Partners in exchange for the $1,150,000 of investors' funds that were transferred to Bighorn and has no legitimate claim to the funds received from Rainbow Partners.

**5) Carolyn Anderson as Trustee Controls the Michael Anderson Trust, Which Received Inn-Gotten Gains**.

43.     Prior to his death, Mr. Anderson purchased a $2 million life insurance policy with, at least in part, investors' money received as a result of Rainbow Partners' and Mr. Anderson's misconduct.  On different occasions, Carolyn Anderson, Rainbow Foundation, and Seaoma each paid the quarterly premiums on Mr. Anderson's life insurance policy.

44.     In his will executed on February 7, 2017, Mr. Anderson bequeathed all his personal property to Carolyn Anderson.  On the same day, he identified the Michael Anderson Trust as the beneficiary of his life insurance policy.

45.     Upon Mr. Anderson's death, the life insurance policy paid $2 million dollars to the Michael Anderson Trust.  Carolyn Anderson serves as the Trustee of the Michael Anderson Trust.

46.     Carolyn Anderson is currently controlling the assets in the Michael Anderson Trust for her own benefit.  Carolyn Anderson used approximately $200,000 of the life insurance proceeds to purchase a house at 18 Lighthouse Point Circle, Ponte Vedra, Florida.  In addition, Ms. Anderson used a portion of the life insurance proceeds to lease a Jaguar F-Pace car and to pay her personal living expenses.

47.     Carolyn Anderson used approximately $1,800,000 of the life insurance proceeds to fund another trust for the benefit of her minor children.  Ms. Anderson is the Trustee of that trust.

48.     Ms. Anderson has moved insurance proceeds between financial institutions to

financial institutions closer to her home.

49.     The Michael Anderson Trust, Carolyn Anderson, and the trust created for the benefit of Carolyn Anderson's minor children were unjustly enriched through the use of investors' funds to pay the premiums on Michael Anderson's life insurance policy. The Michael Anderson Trust, Carolyn Anderson, and the trust created for the benefit of Carolyn Anderson's minor children did not provide bona fide services or other valuable consideration to Rainbow Partners.

**D.     Rainbow Partners and Michael Anderson Engaged in a Scheme and Fraudulent Practices or Courses of Business to Defraud Rainbow Partners' Investors.**

50.     From at least March 2014 and continuing through February 2017, Rainbow Partners and Michael Anderson engaged in a scheme to defraud Rainbow Partners' investors. In furtherance of the scheme, Rainbow Partners and Mr. Anderson engaged in the following deceptive acts.

**1)     Mr. Anderson and Rainbow Partners Misappropriated Investors' Funds.**

51.     As detailed above, Mr. Anderson used Rainbow Partners as part of a scheme to misappropriate investors' money. Mr. Anderson induced investors to invest in Rainbow Partners claiming that he would use that money to invest in stocks, bonds and securities. In fact, Mr. Anderson misappropriated much of the investors' money.

52.     Mr. Anderson caused Carolyn Anderson to create the Rainbow Foundation, which he used as a fraudulent device to misappropriate investors' funds through the guise of contributions to a charitable organization. In fact, Rainbow Foundation was not a bona fide charitable organization. It engaged in no charitable activities.

53.     Mr. Anderson caused Carolyn Anderson to create Seaoma, which he used as a fraudulent device to misappropriate investors' funds through the guise of paying Seaoma for

12

purported services.  In fact, Seaoma did not provide bona fide services or other consideration to Rainbow Partners to warrant the payments.

54.     Mr. Anderson caused Rainbow Partners to secretly pay investors' funds to Carolyn Anderson or to third parties for her benefit, when she was not entitled to any of the investors' funds.  Mr. Anderson also caused Rainbow Partners to secretly pay investors' funds to Seaoma and Rainbow Foundation, neither of which was entitled to any of the investors' funds.

55.     Mr. Anderson caused Carolyn Anderson, the Rainbow Foundation, and Seaoma to use funds, which were fraudulently obtained from the investors in Rainbow Partners, to pay his life insurance premiums, and other personal expenses such as the lease of an automobile, and his credit card expenses.

56.     Mr. Anderson caused Rainbow Partners to secretly transfer $1,150,000 of investors' funds to Bighorn, which was not entitled to any of the investors' funds.

**2)   Mr. Anderson and Rainbow Partners Made Ponzi-like Payments Using Investors' Funds Rather Than Trading Profits**.

57.     Mr. Anderson engaged in fraudulent acts, including making Ponzi-like payments, to suggest that Rainbow Partners was profitable when, in fact, it was not.

58.     Beginning in April 2014, Mr. Anderson created and caused Rainbow Partners to issue monthly statements to investors that falsely represented that their trading in securities made profits.  Contrary to these representations, Rainbow Partners lost money trading securities. These false and misleading monthly statements caused investors not to sell or withdraw their investments and to invest additional money with Rainbow Partners.

59.     Although Rainbow Partners did not make profits from trading securities, Mr. Anderson directed Rainbow Partners to transfer funds as purported profit donations to Rainbow Foundation.  These deceptive transfers created the false appearance that Mr. Anderson's trading

program was successful.

60. Beginning in May 2014, Mr. Anderson created and caused Rainbow Partners to issue monthly checks to investors as purported trading profits. In fact, Rainbow Partners did not generate the trading profits represented. Similar to a Ponzi scheme, Mr. Anderson caused Rainbow Partners to use investors' funds, rather than earnings from trading of securities, to pay purported monthly profits. Rainbow Partners and Mr. Anderson paid investors approximately $1.9 million in purported trading profits.

### 3) Mr. Anderson Took Further Deceptive Acts In Furtherance of His Fraudulent Scheme.

61. On occasion, Mr. Anderson forged the signature of Carolyn Anderson to facilitate bank and brokerage transactions necessary to implement his fraudulent scheme.

62. In addition, Rainbow Partners and Mr. Anderson perpetrated their scheme by, among other things, making numerous false representations to Rainbow Partners' investors. As detailed below, these false statements include falsely representing to investors that Rainbow Partners was profitable, falsely representing to investors that profits from their investments would be donated to the Rainbow Foundation, a legitimate charitable organization run by Mr. Anderson's wife, and making the additional misstatements and omissions described herein.

63. The foregoing misconduct and misrepresentations through which Mr. Anderson and Rainbow Partners carried out their fraudulent scheme were material to investors, who would not have invested or maintained their investments with Rainbow Partners but for Mr. Anderson's and Rainbow Partners' fraudulent scheme.

64. During the scheme, Rainbow Partners and Mr. Anderson knew, were reckless in not knowing, and were negligent in not knowing, that Rainbow Partners was not profitable, that Mr. Anderson was misappropriating investor funds, and the true source of the funds paid to

Rainbow Partners' investors.

**E.      Rainbow Partners and Michael Anderson Made False, Fraudulent, and Material Misrepresentations and Omissions in Connection with the Rainbow Partners' Securities Offering.**

65.      In raising funds from investors and convincing investors to continue to invest, Rainbow Partners, through its agent and principal, Michael Anderson, made numerous material misrepresentations and omissions regarding the Rainbow Foundation charitable organization, Rainbow Partners' business and trading results, and the use of investors' funds.

**1)   False and Misleading Statements Regarding the Rainbow Foundation.**

66.       From March 2014 through approximately January 2017, Mr. Anderson orally told Rainbow Partner investors and potential investors that he was formerly a highly successful, hedge fund manager, that he was now retired, and that he was willing to come out of retirement to help his friends and his wife's charity, the Rainbow Foundation.

67.      From March 2014 through approximately January 2017, Mr. Anderson also told investors that the Rainbow Foundation was a charitable organization formed to assist abused women and children.

68.      Mr. Anderson and Rainbow Partners represented in the LLC Agreement that 20 percent of the trading profits would be donated to the Rainbow Foundation.  Later versions of the LLC Agreement stated that 12.5 percent of all profits will be donated to the Rainbow Foundation.

69.      These statements were false.  The Rainbow Foundation was a sham organization with no legitimate business operations and that did no charitable work.

70.      Notwithstanding oral and written representations in the LLC Agreement that an important part of Rainbow Partners' mission was to fund the Rainbow Foundation with trading

profits, Mr. Anderson did not disclose that the Rainbow Foundation was a sham organization with no legitimate business operations. Further, Mr. Anderson did not tell investors that he used the Rainbow Foundation as a means to misappropriate investors' funds to pay his and his wife's personal expenses, such as automobile leases and credit card payments.

71.     Mr. Anderson knew, was reckless in not knowing, and was negligent in not knowing these statements about the Rainbow Foundation were false and misleading because Rainbow Foundation was not actually a charity and he used the Rainbow Foundation to hide his misappropriation of investors' funds.

72.     These misstatements and omissions were material to Rainbow Partners' investors because the investors made their investment decision in part because a portion of the profits was to be paid to a charitable organization.

### 2) False and Misleading Statements Regarding Rainbow Partners' Trading Results.

73.     Between March 2014 and January 2017, Mr. Anderson orally and in correspondence told investors that they could expect profits of 1 percent to 4 percent per month.

74.     From April 2014 through at least July 2016, Rainbow Partners and Mr. Anderson prepared monthly statements that were sent to investors, which misrepresented the profit or loss from the securities trading, the percent of gain that was earned, the amount donated to the Rainbow Foundation, and the disbursement of profits to investors. These monthly account statements stated that Rainbow Partners' trading was profitable.

75.     These statements were false. The representations about the amount of profit, the percent of gain that was earned, the amount donated to the Rainbow Foundation, and the disbursement of profits to investors in the monthly statements were all false and misleading. Rather than profiting, Mr. Anderson and Rainbow partners lost nearly $600,000 trading. They

falsely reported gains on the monthly statements, and falsely reported that purported profits were donated to the Rainbow Foundation and disbursed to the investors.

76.     Mr. Anderson and Rainbow Partners knew, were reckless in not knowing, and were negligent in not knowing that these statements were false because Mr. Anderson conducted all the securities trading and knew that Rainbow Partners did not earn the profits reported on the monthly statements. Mr. Anderson made the false calculations of the amounts to be paid to the Rainbow Foundation and disbursements to investors. The amount of profit or loss from trading by Rainbow Partners was material information to investors who used the information to make the decision whether to invest, to withdraw their investment, or invest additional funds.

### 3) False and Misleading Statements Regarding the Use of Rainbow Partner Investor Funds.

77.     Between March 2014 and February 2017, Rainbow Partners and Mr. Anderson made material false and misleading statements to investors about the use of Rainbow Partners investors' funds.

78.     Rainbow Partners and Mr. Anderson represented in the LLC Agreement that the company's sole purpose was to invest investor funds in "stocks, bonds, and securities for the financial and educational benefit of the Members."

79.     Rainbow Partners and Mr. Anderson represented in the LLC Agreement initially that "twenty percent (20%) of all profits will be donated to the non-profit charitable organization known as 'The End of the Rainbow Foundation, Inc.'" and that "remaining profits will be distributed to each Member in proportion to the percentage of ownership." These statements were false. As described above, rather than use investors' money only to trade, Mr. Anderson and Rainbow Partners misappropriated at least $2.3 million of investors' money and used the misappropriated funds to pay for the Andersons' personal living expenses.

80.     Mr. Anderson and Rainbow Partners knew, were reckless in not knowing, and were negligent in not knowing that the statements about the use of the investors' funds were false because Mr. Anderson personally misappropriated the funds and took the other actions identified to hide that misappropriation.

81.     The use of investors' funds was material information to investors who would not have invested with Rainbow Partners if they knew that Mr. Anderson was going to misappropriate their funds.

**F.      The Investments in Rainbow Partners Are Securities.**

82.     The investments in Rainbow Partners consisted of passive investments of money in a pooled fund by investors expecting to receive profits from Michael Anderson's day trading of securities.  The economic reality of these transactions is that they were investments in Rainbow Partners and understood to be investments by those who invested.

83.     The members invested a minimum of $25,000 to purchase an interest in Rainbow Partners.  Each member had one vote regardless of the percent of ownership or shares.

84.     The Rainbow Partners LLC Agreement required a unanimous vote of the members to change Mr. Anderson's control over the entity.  Because Mr. Anderson held at least four of the membership accounts, Rainbow Partners' investors could not change control without Mr. Anderson's consent.

85.     The funds of the investors were comingled and pooled in Rainbow Partners' bank and brokerage accounts, and used to purchase and sell securities.

86.     Mr. Anderson was the sole person authorized to trade securities for Rainbow Partners.  He made all the trading decisions.  The other members relied upon Mr. Anderson's expertise to make the trading decisions and create the profits from the investment.

87. Mr. Anderson controlled all of the information that was provided to investors.

88. The investment interests in Rainbow Partners constitute investment contracts and are therefore securities.

89. Mr. Anderson and Rainbow Partners were also buying and selling securities in the brokerage accounts of Rainbow Partners.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Fraud in the Offer or Sale of Securities
### Violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)]
### (Against Rainbow Partners and the Estate of Michael F. Anderson)

90. Paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

91. Rainbow Partners and Michael Anderson, directly or indirectly, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails: (a) employed a device, scheme or artifice to defraud with scienter; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

92. By reason of the foregoing, Rainbow Partners and Michael Anderson violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF
### Fraud in the Purchase or Sale of Securities
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]
### (Against Rainbow Partners and the Estate of Michael F. Anderson)

93.     Paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

94.     Rainbow Partners and Michael Anderson, directly or indirectly, with scienter, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon any person.

95.     By reason of the foregoing, Rainbow Partners and Michael Anderson violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
### Equitable Disgorgement
### (Against Relief Defendants)

96.     Paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

97.      Relief Defendants Carolyn Anderson, individually and as trustee for the Michael Anderson Trust and the trust created for the benefit of her minor children, the Rainbow Foundation, Seaoma, and Bighorn obtained money, property, and assets as a result of the violations of the securities laws by Rainbow Partners and Michael Anderson, to which the Relief Defendants have no legitimate claim.

98.     Relief Defendants obtained the funds under circumstances in which it is not just, equitable, or conscionable for each of them to retain the funds, and therefore have been unjustly enriched.

99.     The Relief Defendants should be required to disgorge all ill-gotten gains which

inured to their benefit under the equitable doctrines of disgorgement, unjust enrichment and constructive trust.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

1.      Find that the Defendants committed the violations alleged in this Complaint;

2.      Order that each of the Defendants and the Relief Defendants disgorge any and all ill-gotten gains, together with pre-judgment and post-judgment interest, derived from the activities set forth in this Complaint;

3.      Order an accounting from the Relief Defendants; and

4.      Grant such other relief as this Court may deem just or appropriate.

## VIII.   JURY DEMAND

The SEC demands a jury in this matter.

Dated:  November 8, 2017

Respectfully submitted,

/s/ Leslie J. Hughes
Leslie J. Hughes (Col. Bar No. 15043)
Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1086 (Hughes)
(303) 844-1026 (Kasper)
HughesL@sec.gov

*Attorney for Plaintiff United States Securities and Exchange Commission*