IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-02670-MSK

**SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

v.

**THE END OF THE RAINBOW PARTNERS, LLC, and
THE ESTATE OF MICHAEL F. ANDERSON,**

    Defendants,

and

**CAROLYN M. ANDERSON, individually, as the Personal Representative of the Estate of
Michael F. Anderson, and as trustee for the Michael Anderson Trust and a trust for the
benefit of her minor children,
THE END OF THE RAINBOW FOUNDATION, INC.,
SEAOMA CONSULTING COMPANY, and
BIGHORN WEALTH FUND, L.P.,**

    Relief Defendants.

_____

**OPINION AND ORDER**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("SEC") Emergency *Ex Parte* Motion for An Order Granting an Asset Freeze and Other Emergency Relief (**# 2**).

## Jurisdiction and Material Facts

The pertinent facts alleged in the SEC's Complaint (**# 1**) can be readily summarized. From 2014 to February 2017, Michael Anderson operated the Defendant entity The End of the Rainbow Partners, LLC ("Rainbow"). Rainbow was ostensibly a stock-trading investment scheme, with the slight twist that a portion of its trading profits were to be donated (with the

investors' upfront consent) to a charitable organization also founded by Mr. Anderson, The End of the Rainbow Foundation, Inc. ("Foundation"). The remaining profits would be paid to investors, to whom Mr. Anderson promised annual rates of return between 12% and 48%. Mr. Anderson ultimately collected more than $5 million in investments in Rainbow.

In reality, Rainbow was a classic Ponzi scheme. Mr. Anderson mostly lost money on trades, distributed false monthly statements to investors showing fictitious gains, and used the capital from later investors to pay off redemption requests by earlier investors. In addition, the SEC alleges that Mr. Anderson diverted more than $2 million of Rainbow's funds to 1) pay his own personal expenses; 2) the bank accounts of his (ex-)wife,[1] Carolyn Anderson, and her personal creditors; 3) Seaoma Consulting Company, an entity consisting solely of Ms. Anderson and which provided only trivial services to Rainbow, such as running errands and proofreading documents; and 4) to Bighorn Wealthfund, a hedge fund that Mr. Anderson also managed. The SEC contends that although Rainbow made few trading profits, it diverted significant sums to the Foundation, despite the fact that the Foundation had no offices or employees, never engaged in any operations, and was nothing more than yet another mechanism for Mr. Anderson to divert investor funds to the personal benefit of himself and Ms. Anderson.[2] Mr. Anderson died in **February 2017**, shortly after signing a confessional affidavit that admitted some of the facts set forth above.

---

[1] During most of the relevant time period herein, Mr. Anderson and Ms. Anderson were divorced, but Mr. Anderson continued to reside in the home owned by Ms. Anderson. They reconciled and were re-married shortly before Mr. Anderson's death in February 2017.

[2] The SEC's Complaint also devotes significant attention to a life insurance policy insuring Mr. Anderson's life, the premiums for which were paid in whole or part with Rainbow investor funds. The policy named Mr. and Ms. Anderson's children as beneficiaries. After Mr. Anderson's death, the policy paid $2 million in benefits, some of which were used by Ms. Anderson to acquire a residence in Florida, and the remainder of which were placed in an unidentified trust for the benefit of the children, for which Ms. Anderson serves as trustee.

The SEC asserts two claims against Rainbow and Mr. Anderson's estate: (i) securities fraud in violation of the Securities Act, 15 U.S.C. § 77q(a); and (ii) securities fraud in violation of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  In addition, the SEC asserts a claim for "equitable disgorgement" against the "Relief Defendants" – Ms. Anderson in various capacities, Seaoma, and Bighorn -- seeking to recover the investor funds they obtained and for which they have no legitimate claim. Separately, the SEC has moved for an *ex parte* temporary restraining order and preliminary injunction **(# 2)**, to freeze the assets of all Defendants, including the Relief Defendants.

The Court exercises jurisdiction pursuant to 18 U.S.C. §1331.

## Analysis

To obtain an *ex parte* temporary restraining order under Rule 65(b), the SEC must: (i) demonstrate, by affidavit or verified complaint, that it will suffer immediate and irreparable injury before the Defendants could be heard in opposition to the motion; and (ii) provide a certification from its counsel identifying any efforts that the SEC has made to give notice of the motion to the Defendants and the reasons why such notice should not be required.  Fed. R. Civ. P. 65(b)(1)(A), (B).  In addition, the SEC must make a showing that it is likely to succeed on the merits of its claims against the Defendants.  *Smith v. S.E.C.*, 653 F.3d 121, 127-28 (2d Cir. 2011).  For the claims against Mr. Anderson's estate and Rainbow, this is satisfied by a showing that an inference can be drawn that the party has violated securities laws.  *Id.* at 128. For the claims against the Relief Defendants, the SEC must show that the defendant has received ill-gotten funds and does not have a legitimate claim to them.  *Id.*

The Court has some doubt that the SEC has satisfied its obligations under Rule 65(b). It relies upon a conclusory affidavit from its counsel, Leslie Hughes, but that affidavit does not address either of the Rule 65(b) elements. It makes a perfunctory assertion that "providing [all Defendants] with advance notice of the Commission's emergency motion seeking an asset freeze would allow them to dissipate or conceal assets," but offers no factual basis for that conclusion. Indeed, the assertion is troubling insofar as the record indicates that the SEC deposed Ms. Anderson on October 4, 2017, asking her numerous questions about Mr. Anderson's operations and the grounds on which she asserted claims to various funds and property derived from Mr. Anderson's fraud. The Hughes affidavit offers no explanation why notifying Ms. Anderson of this Motion would be more likely to prompt her to begin dissipating or concealing assets, than the taking of her deposition would have done.

Nevertheless, the Court is mindful that the SEC's purpose in seeking an asset freeze is to advance the public interest in ensuring that ill-gotten funds can be secured to satisfy a potential future judgment. *Smith*, 653 F.3d at 127. As such, the Court is inclined to overlook small procedural defects if the motion is otherwise well-taken. Here, the Court is satisfied that the SEC has made an adequate showing – based on Mr. Anderson's confessional affidavit – that it is likely to succeed in its claims of securities fraud against Mr. Anderson's estate and Rainbow. Thus, an *ex parte* freeze of all assets held by the named Defendants, End of the Rainbow and the Estate of Michael F. Anderson, is appropriate.

The Court is less sanguine as to the SEC's blanket request to freeze all assets of the various Relief Defendants. The SEC does not allege that these defendants have any direct culpability for Mr. Anderson's fraudulent acts; the only question is whether and to what extent these defendants received funds that Mr. Anderson improperly diverted from Rainbow and

whether those defendants have any legitimate claim to the funds they received. In this regard, the Court notes that, in addition to Mr. Anderson's confessional affidavit, the SEC's motion is supported by two additional affidavits. One, executed by Jeffrey Lyons, the SEC's counsel, is more argument than affidavit. Mr. Lyons relies on various exhibits, rather than his own personal knowledge of the facts, to support his averments. The other affidavit is from Kerry Matticks, an SEC staff accountant, and is based upon a review of Rainbow's books and records and various other financial information relating to the various Defendants. Based upon these affidavits and the corresponding exhibits, the Court makes the following findings:

• <u>The Foundation</u>: The Matticks affidavit is somewhat unclear on precisely what funds were diverted from Rainbow to the foundation. At one point, that affidavit states that Rainbow diverted a total of approximately $218,000 to the Foundation. *Docket* # 2-4, ¶ 32. It is unclear whether the SEC is contending that all of these funds were paid improperly. The Matticks affidavit specifically singles out four specific months between June 2014 and February 2015 when Rainbow transferred approximately $66,000 in funds to the Foundation. These transfers occurred in months where Rainbow did not generate any trading profits. By singling out these four months and this $66,000 in payments, the implication appears to be that the remaining $150,000 or so that Rainbow paid the Foundation may have been proper. Certainly, there is evidence that although Rainbow lost large amounts of investor capital through its largest trading accounts, some of its smaller accounts showed modest net trading profits over the time period at issue. *Docket* # 2-14. Thus, on the limited record before it, the Court finds that the SEC has shown only that the Foundation received $66,000 in payments to which it was not entitled. In such circumstances, the Court will authorize an *ex parte* asset freeze on the Foundation's assets in that amount.

• <u>Ms. Anderson, individually</u>: The Matticks affidavit asserts that Ms. Anderson personally received roughly $465,000 from Rainbow, plus approximately $186,000 in payments that Rainbow made directly to Ms. Anderson's personal creditors on her behalf. However, both Mr. Anderson's confessional affidavit and Ms. Anderson's carefully-worded testimony at her October 4 deposition state that Mr. Anderson owed bona fide debts to Ms. Anderson, including back child support payments and rent for living in her house. Generally, a relief defendant in possession of purloined funds is not subject to a disgorgement order if there is evidence that the defendant has a "legitimate claim" to some portion of the funds. A legitimate claim can arise when the defendant has provided meaningful services to the payor, such that the monies identified could be said to be consideration for such services. *F.T.C. v. Direct Marketing Concepts, Inc.*, 569 F.Supp.2d 285, 312 (D.Ma. 2008). Ms. Anderson may have a legitimate claim to funds for child support and rent paid by <u>Mr. Anderson</u> from his own accounts, but nothing in the instant record suggests that Ms. Anderson contends that she provided services to Rainbow for which she was entitled to compensation. Thus, the Court finds that the SEC has shown that Ms. Anderson allegedly received $465,000 from Rainbow for which she has no legitimate claim. The Court declines to supplement that amount with the $186,000 paid by Rainbow to third parties for Ms. Anderson's benefit, as the record does not suggest that Ms. Anderson ever had possession of those funds. Accordingly, the Court will authorize a *ex parte* freeze on Ms. Anderson's <u>individual</u> assets in the amount of $465,000.

• <u>Ms. Anderson, as trustee</u>: The caption of this case and fleeting reference in the Complaint describe Ms. Anderson acting as trustee for two trusts, the Michael Anderson Trust and an unidentified "trust for the benefit of her minor children." Both trusts appear to have been settled with the proceeds of the life insurance policy on Mr. Anderson's life. There is some

scattered evidence that Mr. Anderson may have improperly caused Rainbow to pay some of the premiums on that policy – approximately $4,160 in premiums were paid by the Foundation and an additional $1,500 were paid by Seaoma (discussed below). The SEC appears to assume that, by showing that the <u>premiums</u> for the life insurance policy can be traced back to Rainbow investor funds, the SEC is entitled to freeze and eventually obtain the <u>proceeds</u> of that policy. It cites to no authority for that proposition, and in the absence of such authority, the Court declines to adopt that position on an *ex parte* basis. In any event, as noted both above and below, the record appears to reflect that both the Foundation and Seaoma had legitimate entitlements to <u>some</u> amount of money from Rainbow, and it is plausible that the relatively small amounts of insurance premiums paid by the two entities fit within the sums that Rainbow legitimately owed to them. Thus, the Court denies the SEC's *ex parte* request to freeze any assets of the two trusts over which Ms. Anderson acts as trustee.

• <u>Seaoma</u>: The Matticks affidavit indicates that, during the time period at issue, Rainbow paid approximately $360,000 to Seaoma. According to Ms. Anderson's deposition testimony, Mr. Anderson devised Seaoma as a vehicle for Ms. Anderson to accumulate more tax deductions for herself. She testified that, on behalf of Seaoma, she rendered services for "a few hours a week" to Rainbow, such as running errands to Costco or to a print shop, and proofreading and giving her opinion as to graphic design of various documents that Rainbow was going to distribute. Seaoma did not invoice Rainbow for these services and at her deposition, Ms. Anderson was unable or unwilling to attempt to quantify the value of the services. Clearly, Ms. Anderson –as Seaoma – has a legitimate claim to payment from Rainbow for the value of the minimal services she provided; the more difficult question is fixing that value. But the burden to quantifying ill-gotten gains as compared to a legitimate claim for payment falls to the SEC in its

*ex parte* motion. Absent a showing that distinguishes what was an ill-gotten gain, none of Seoma's funds are subject to a freeze at this time.

• <u>Bighorn</u>: The record is also vague as to Bighorn. The SEC describes it only as a "hedge fund" of which Mr. Anderson was a manager, and which received funds that Mr. Anderson transferred from Rainbow. The Matticks' affidavit calculates that Bighorn received $1.15 million of Rainbow investor funds. Mr. Anderson's confessional affidavit sheds some additional light on the issue, explaining that Bighorn "opened a brokerage account" for Rainbow and that one of Bighorn's partners "handled all trades with these . . . accounts." Thus, it appears that Bighorn rendered services to Rainbow in the form of handling any trading of securities owned by Rainbow. This would constitute a legitimate entitlement for Bighorn to receive <u>some</u> compensation from Rainbow, but once again, it is difficult for the Court to fix a reasonable value for such services. The burden of establishing which funds were paid for legitimate claims and which were ill-gotten gains again is on the SEC, and the insufficiency of the showing in this record prevents imposition of any freeze on Bighorn's funds.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the SEC's Motion for a Temporary Restraining Order **(# 2)**. Specifically, the Court orders that:

1. All assets of any kind held in the name of The End of the Rainbow Partners, LLC or the Estate of Michael F. Anderson, wherever located or by whomever held, are frozen;

2. Assets of The End of the Rainbow Foundation, up to a maximum value of $66,000 and assets of Carolyn M. Anderson, individually, up to a maximum value of $465,000, wherever located or by whomever held, are frozen.

3. Any party in this matter or person acting at their control or direction, and any person having custody or control over the assets listed above who receives actual notice of this Order,

shall retain and preserve such assets in their control, preventing their dissipation, withdrawal, or transfer, as set forth herein.

4. The provisions of paragraphs 1-3 above shall remain in effect until **11:59 p.m.** MST on **November 21, 2017**, and shall thereafter be lifted unless otherwise directed by the Court in a separate Order.

5. The Court will hold a non-evidentiary hearing on the SEC's Motion for Preliminary Injunction at **9:00 a.m.** on **November 21, 2017**. The purpose of the hearing is to determine: (i) whether and to what extent the parties can agree to continue, expand, or abandon some or all of the current asset freeze; (ii) whether and to what extent there are pertinent facts in dispute such that an evidentiary preliminary injunction hearing is necessary on the SEC's remaining requests; and (iii) to schedule an evidentiary hearing. To ensure that the parties are prepared to proceed as scheduled, the Court directs that the SEC effectuate service, pursuant to Fed. R. Civ. P. 4, of the Summons, Complaint, Motion for Preliminary Injunction, and this Order, on all of the Defendants on or before November 16, 2017. The Defendants shall file a response to the Motion for Preliminary Injunction at or before 1:00 p.m. MST on November 20, 2017.

Dated this 14th day of November, 2017 at 9:36 a.m.
.
                                            **BY THE COURT:**

_Marcia S. Krieger_
_____

                                          Marcia S. Krieger
                                          Chief United States District Judge