IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-cv-02670-MSK

**SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

v.

**THE END OF THE RAINBOW PARTNERS, LLC,**

    Defendant,

and

**CAROLYN M. ANDERSON,
THE END OF THE RAINBOW FOUNDATION, INC.,
SEAOMA CONSULTING COMPANY, and
BIGHORN WEALTH FUND, L.P.,**

    Relief Defendants.

_____

**OPINION AND ORDER DENYING MOTION TO DISSOLVE AND REFERRING
EMERGENCY MOTION TO MAGISTRATE JUDGE**
_____

**THIS MATTER** comes before the Court pursuant to Ms. Anderson's Motion to Dissolve **(# 53)** the preliminary injunction currently pending **(# 17)**, the Securities and Exchange Commission's ("SEC") response **(# 59)**, and Ms. Anderson's reply **(# 60)**; and Ms. Anderson's Emergency Motion for Release of Funds **(# 66)**, the SEC's response **(# 67)**, and Ms. Anderson's reply **(# 69)**.

The Court assumes the reader's familiarity with the proceedings to date. In summary, the SEC commenced this action against Rainbow Partners, an alleged Ponzi scheme through which its founder, the late Michael Anderson, defrauded investors and diverted investor funds to the

1

personal benefit of himself, his (ex-)wife, and certain legal entities they owned. The SEC asserts various securities fraud claims against Rainbow Partners, as well as a claim for equitable disgorgement against the Relief Defendants, including Carolyn Anderson, Mr. Anderson's ex-wife, and Seoma Consulting Co. ("Seoma"), an entity Ms. Anderson controls. At the commencement of this action, the SEC sought a temporary restraining order that froze certain assets in the hands of the Relief Defendants, on the grounds that those assets were traceable to Mr. Anderson's fraud and that the Relief Defendants had no legitimate claim to them. The Court granted **(# 5)** that motion in part, temporarily freezing $66,000 in assets in the hands of the Foundation and $465,000 in assets in the hands of Ms. Anderson.

The Court scheduled an evidentiary preliminary injunction hearing to address whether the temporary asset freeze should be continued. The parties consented **(# 29)** to the continuation of the freeze pending that hearing. At a hearing on January 16, 2018 **(# 32)**, the Court determined that, due to some confusion over who would be acting as the Personal Representative of Mr. Anderson's estate (and thus, who was the proper party to appear on behalf of the estate, which was then a defendant in this action), it was inadvisable to conduct a preliminary injunction hearing at that time. The Court directed the parties to resolve the probate dispute and that they could then request that the Court set a hearing on the preliminary injunction motion. A few weeks later, the SEC moved to dismiss **(# 38)** all claims against Mr. Anderson's estate. In its Order **(# 39)** dismissing the claims against the estate, the Court stated "[t]o the extent any party believes that a hearing is necessary on any outstanding matter at this time, that party may move for the setting of a hearing, identifying the specific issues that the hearing would encompass . . ." Neither party requested the setting of a hearing for more than six months, and thus, the asset freeze remained in place pursuant to the parties' consent.

In September 2018, Ms. Anderson filed the instant motion **(# 53)** seeking to dissolve the asset freeze, alleging that the SEC had presented misleading information about the source of the frozen funds; in actuality, she alleged, the frozen funds constituted assets that belonged solely to Ms. Anderson and were acquired long before Mr. Anderson embarked on (much less profited from) the fraudulent scheme. Ms. Anderson also argued that, in any event, she had a legitimate claim to the frozen funds because they reflected payments of certain domestic relations obligations that Mr. Anderson owed her, among other things.

More recently, Ms. Anderson filed the instant Emergency Motion **(#66)** to modify the asset freeze. This motion repeats some of the same fundamental argument in her prior motion – *e.g.* that the SEC misrepresented the evidence in its motion seeking the asset freeze, particularly related to Ms. Anderson's independent ownership of the assets in question – and supplemented it with several additional arguments presented in more detail. Ms. Anderson also argues that an emergency release of some portion of the funds is necessary to allow her to continue to retain the services of her counsel in this matter.

**A. Motion to Dissolve Asset Freeze**

Ms. Anderson's initial motion seeks to dissolve the asset freeze as it relates to the $465,000 of her own personal funds . She presents two primary arguments: (i) that the SEC falsely claimed that Ms. Anderson's equity in a home she owned in Vail, Colorado was derived from investor funds, when, in fact, Ms. Anderson used at least $400,000 of her personal funds to initially purchase and improve the home, giving her a legitimate claim to the funds subject to the asset freeze; and (ii) Mr. Anderson owed Ms. Anderson several hundred thousand dollars in unpaid child support, alimony, rent, and other obligations, giving her a legitimate claim to the frozen funds.

3

The Court summarily rejects the second argument: that <u>personal</u> debts owed by Mr. Anderson to Ms. Anderson give her a legitimate claim to <u>investor</u> funds that Mr. Anderson improperly transferred to her. The Court previously identified that defect in the initial asset freeze order (**# 5** at 6) and the SEC raised that same issue in response to Ms. Anderson's motion. Ms. Anderson's reply does not address that issue further. Accordingly, the Court finds that Ms. Anderson has not come forward with any evidence that suggests that debts owed to her from Mr. Anderson personally constitute a basis for modifying or dissolving the asset freeze.

As to Ms. Anderson's arguments regarding her legitimate claim to equity in the Vail home, Ms. Anderson repeats and amplifies those arguments in the more recent Emergency Motion. For purposes of expediency, it thus suffices to deem that portion of the Motion to Dissolve to be superseded by (and incorporated in, if necessary) the Emergency Motion. Accordingly, the Court denies, without prejudice, the Motion to Dissolve.

**B. The Emergency Motion**

Ms. Anderson's Emergency Motion raises a series of issues: (i) the asset freeze should be modified to permit Ms. Anderson to expend at least $137,000 of the frozen funds to pay her counsel so that he will continue representing her in this matter; (ii) that the SEC made certain misrepresentations of fact in order to secure the asset freeze; (iii) that the SEC made particular misrepresentations about Ms. Anderson's acquisition of the Vail home; (iv) that the SEC purposefully misstated the start date of Mr. Anderson's misconduct in order to conceal the fact that Ms. Anderson was actually another investor victim of Mr. Anderson, rather than a gratuitous transferee of investor funds; (v) the SEC concealed certain facts about Mr. Anderson's creation and funding of the Foundation; and (vi) the SEC mislead the Court about Mr. Anderson's alleged

purchase of a life insurance policy with investor funds when, in fact, the policy was purchased by Mr. Anderson in conjunction with marital dissolution proceedings many years earlier.

Putting aside Ms. Anderson's contentions that the SEC purposefully misled the Court or otherwise engaged in unethical conduct, the Emergency Motion can be understood to contest the facts alleged by the SEC in its application for the asset freeze and relied upon by the Court in granting that freeze. In that sense, the Court treats the motion as a delayed request for an evidentiary hearing on whether or not the temporary asset freeze should remain in effect pending further proceedings. Because the Court is unavailable to conduct that hearing on a sufficiently timely basis, the Court will refer the matter to the Magistrate Judge to conduct an evidentiary hearing and make a recommendation to the Court as to: (i) whether the *ex parte* asset freeze initially granted by the Court should be continued as a preliminary injunction upon notice to Ms. Anderson and the other Defendants in accordance with Fed. R. Civ. P. 65(a); and (ii) whether any other requests for relief in Ms. Anderson's Emergency Motion should be granted. Counsel shall contact the Magistrate Judge's chambers to schedule such a hearing or to take whatever other action the Magistrate Judge deems appropriate to address those issues.

For the foregoing reasons, Ms. Anderson's Motion to Dissolve **(# 53)** is **DENIED WITHOUT PREJUDICE** as superseded. Ms. Anderson's Emergency Motion **(# 66)** is **REFERRED** to the Magistrate Judge for the purposes of conducting an evidentiary hearing and to issue a recommendation as to whether the current asset freeze should be continued in the form

of a preliminary injunction and to issue a recommendation as to whether any other forms of relief requested by Ms. Anderson should be granted.

Dated this 19th day of August, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge